IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

FILED
SEP 25 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| ANGONG D. ACUIL | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No: 1:13CV1199 LO/TCB |
| | ) |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Angong D. Acuil ("Plaintiff"), by and through counsel, brings this Complaint against Defendant Equifax Information Services, LLC ("Defendant" "Equifax") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. This case further exposes Equifax's disregard for credit dispute information submitted by consumers when they try to correct mistakes on their Equifax credit files. In this particular case, Ms. Acuil was the victim of identity theft while she was out of the United States and living in her native country. Upon her return to the United States, she discovered that significant debts were associated with her name that she did not incur in her name. As a result, she filed a police report with her local jurisdiction, and she sent a dispute letter to Equifax that same day containing identification of the accounts believed to be disputed, information related to the police report provided and identifying information with name, social security number, driver's license, address identification, and passport identification. Based upon the volume of information provided, there was no way that Equifax could not identify the disputed credit file information or reach any conclusion that the Plaintiff opened the identity theft

related accounts. Rather than act in accordance with the FCRA, Equifax engaged in a series of letters, five total, all of which claimed that Equifax was "unable to locate" the Plaintiff's credit file. As detailed herein, documents produced in other cases demonstrate that Equifax's letters are misrepresentations because not only does Equifax locate the consumer's credit file, but Equifax also conducts an investigation into the disputed information identified by the consumer through the issuance of ACDVs. Equifax's actions are in reckless disregards for the requirements of FCRA and frustrate the consumer's ability to know the contents of information in their credit files. Accordingly, Plaintiff demands actual damages, punitive damages, statutory damages, attorneys' fees and costs based upon Equifax' sanctions.

**Parties**

2. Plaintiff Angong D. Acuil is a natural person and is a resident of the Commonwealth of Virginia. Ms. Acuil is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Angong D. Acuil.

3. Defendant Equifax Information Services LLC, (hereinafter "Equifax"), is a foreign limited liability company with a principal office address in Georgia. Equifax is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Equifax regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction. Plaintiff resides in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of his claims.

## Factual Allegations

5. Ms. Acuil had lived in the United States from January 2001 to 2007 while she went to school and after graduation worked for 18 months in Washington, D.C. In March of 2007, she went back to Sudan where she worked for a number of years. Before she left the United States, Ms. Acuil made sure that her financial affairs were in order, and she left with no outstanding debt and no derogatory credit references on her credit file. In June of 2012, Ms. Acuil returned to the United States to work at the Embassy of South Sudan.

6. A few months after her return to the United States, Ms. Acuil started getting debt collection calls stating that she owed money for past due debts. Ms. Acuil knew that she should not have had any past due debts because she paid all of her creditors prior to leaving the United States in 2007.

7. Concerned about the situation, Ms. Acuil tried to obtain copies of her consumer file disclosures from the major credit reporting agencies, but she was only able to obtain copies of her credit file from Experian, which occurred on or about January 29, 2013. Based upon information and belief, Equifax refused to provide her with a copy of her consumer file disclosure after her on-line request.

8. After reviewing the Experian credit file, the contents confirmed her suspicions that she had debts associated with her name that are not her debts. On the file

disclosure, she saw six trade lines that she did not recognize. These trade lines were for credit cards and resulting debt collector accounts for debts that she never opened, authorized, or initiated. Based upon information and belief, the identity theft related debt totaled more than $25,000. This is a staggering sum of money given that Ms. Acuil was returning to the United States and trying to reestablish herself in this country. Ms. Acuil's credit file should have reported no derogatory credit references and no money owed.

9. Ms. Acuil was extremely upset to see the debts and debt collection companies on her credit reports. As she got more calls and letters from debt collectors, she did not know what to do in order to remedy her situation. After thinking about the situation, she believed she was the victim of identity theft. On February 27, 2013, Ms. Acuil decided to file a police report related to the identity theft in the City of Alexandria, Virginia as that was the jurisdiction of her current residence.

10. On February 27, 2013, Ms. Acuil also sent credit dispute letters to the three major credit reporting agencies. In the letter that she sent to Equifax, she informed them that she was the victim of identity theft, provided the details of the time that she spent out of the country, when the fraudulent accounts were opened, and provided all of the identifying information for the police report including the Officer's name, case number, and the cell phone number for the officer that took the report. Included with the letter were copies of her passport pages that demonstrated she was out of the country when the fraudulent accounts were opened. She also included proof of her address and identity in the form of a current United States Department of State driver's license as well as her social security card. No reasonable review and consideration of all of the relevant

4

documents included with the letter would result in a credit dispute investigation that allowed the identity theft related accounts to remain on Ms. Acuil's credit file. At the time of the dispute letter, Equifax refused previous requests to provide her with a copy of her consumer file disclosure, so Ms. Acuil disputed the inaccurate accounts that she believed were reporting at the time that she did the letter.

11. Because Ms. Acuil included the police report number, officer name, officer cell phone number, and copies of all of the relevant information proving her identity, the identity theft, and that she had been out of the country, no reasonable investigation by Equifax would have allowed the accounts to remain on her credit report. Unfortunately for Ms. Acuil, Equifax would fail to take proper actions to review the relevant documents and remove the inaccurate accounts after receiving the first dispute letter, and therefore the identity theft situation continues to cause her problems.

12. Ms. Acuil would become a victim of Equifax's disingenuous campaign where it ignores identifying information sent by the consumer by repeatedly stating that Equifax cannot locate the consumer's credit file and thereafter requests the exact same information in response to a dispute letter that has already been provided by that consumer.

13. Ms. Acuil had a mailed one of her dispute letters via certified mail, and the return receipt mail card indicated that Equifax received the certified mail dispute letter on or about March 5, 2013.

14. On March 8, 2013, Equifax sent the first of its letters indicating that it could not locate Ms. Acuil's credit file. Equifax addressed the letter to Angong Dhol Acuil and stated in part, "We received your request concerning your Equifax credit file.

5

However, with the information that you provided, Equifax was unable to locate a credit file. A copy of one item, in **EACH** of the categories below is needed in order to verify your identification and address. The item you choose in the identity category MUST contain your Social Security number and the item you choose in the address category MUST contain your current mailing address of **ANGONG DHOL ACUIL, 1469 S Highview Ln Apt 404, Alexandria VA 22311-2315.**" Based upon information and belief the first two attachments included with the dispute letter satisfied the information requirements of the letter Equifax sent on March 8, 2013. Equifax simply failed to review properly the documents that Ms. Acuil provided.

15. On March 12, 2013, Equifax sent another letter to Ms. Acuil indicating that it was unable to locate her credit file. Once again, Equifax's letter was both misleading and nonresponsive to the credit dispute letter that Ms. Acuil had sent to Equifax. Equifax stated in the March 12, 2013 letter to Ms. Acuil, "We received your request concerning your Equifax credit file. However, with the information that you provided, Equifax was unable to locate a credit file. The item you choose in the identity category MUST contain your Social Security number and the item you choose in the address category MUST contain your current mailing address of **ANGONG D. ACUIL, 1469 S Highview Ln Apt 404, Alexandria VA 22311-2315.**" The letter again went on to state that Ms. Acuil needed to provide proof of her identity as well as proof of her address so that Equifax could locate her credit file. Based upon information and belief including its actions in other cases, Equifax misrepresented to Ms. Acuil what occurred after it received a copy of her credit dispute letter by stating that it could not locate her credit file. Based upon documents reviewed in other cases, Equifax will say that it

cannot locate a credit file to mislead and confuse a consumer while at the same time it issues ACDVs involving the disputed accounts for the credit file that the letter claims that Equifax cannot locate.

16. On March 16, 2013, Equifax sent yet another letter to Ms. Acuil regarding her credit file. This letter was patently inaccurate as it did not even identify Ms. Acuil's correct name as it was addressed to "Angong F Acuil" and stated in part, "We received your request concerning your Equifax credit file. However, with the information that you provided, Equifax was unable to locate a credit file. The item you choose in the identity category MUST contain your Social Security number and the item you choose in the address category MUST contain your current mailing address of **ANGONG F ACUIL, 1469 S Highview Ln Apt 404, Alexandria VA 22311-2315**." Additional discovery is necessary as to why this letter was sent and how Equifax determined to draft a letter to Angong F Acuil.

17. Equifax's inaccurate letter campaign continued on March 17, 2013 with yet another letter indicating that Equifax could not locate Ms. Acuil's credit file. In the March 17, 2013 letter addressed to Angong D Acuil, Equifax stated, "We received your request concerning your Equifax credit file. However, with the information that you provided, Equifax was unable to locate a credit file. The item you choose in the identity category MUST contain your Social Security number and the item you choose in the address category MUST contain your current mailing address of **ANGONG D. ACUIL, 1469 S Highview Ln Apt 404, Alexandria VA 22311-2315**." As with all of these letters that were sent to Ms. Acuil discovery is necessary into why the letters were sent because she had included her identifying information with her original dispute letter and based

7

upon prior conduct, Equifax will have conducted investigations into the very same credit file that repeated letters represented that Equifax was unable to locate.

18. On March 19, 2013, Equifax issued the fifth and last in the series of letters that claimed Equifax could not locate Ms. Acuil's credit file. The March 19, 2013 letter demonstrates the degree of inaccuracy Equifax has for review of consumer information and issuance of letters stating Equifax is "unable to locate" a consumer credit file. On this final occasion, Equifax sent the same letter but inaccurately identified Ms. Acuil's street address and stated, "We received your request concerning your Equifax credit file. However, with the information that you provided, Equifax was unable to locate a credit file. The item you choose in the identity category MUST contain your Social Security number and the item you choose in the address category MUST contain your current mailing address of **ANGONG DHOL ACUIL, 1469 S HOGHWAY LN APT 404, Alexandria VA 22311-2315**." This letter was inaccurate because it requested the Plaintiff's identifying information for a fifth time, and on this occasion, Equifax completely misidentified the street address associated with the Plaintiff's account. After issuing five letters stating that it could not locate Ms. Acuil's credit files and additional information was necessary, Equifax thoroughly and completely frustrated Ms. Acuil.

19. Based upon documents reviewed in other cases, Equifax has an established pattern of misrepresenting that it cannot locate the credit files of consumers who initiated credit disputes in accordance with 15 U.S.C. §1681i(a) of the Fair Credit Reporting Act. The stated result of Equifax's investigation into the consumer's credit dispute is that Equifax terminated the credit dispute investigation on the grounds that Equifax could not locate the consumer's credit file. Despite the representation that it

cannot process the dispute because it cannot locate their file, previous documents demonstrate that Equifax does investigate information on the consumer's credit file because it knows exactly who the consumer is when it issues its letter stating to the contrary.

20. The mere issuance of the letter to a consumer is a willful violation of the FCRA because the letter intentionally misrepresents the results of what Equifax did after receiving the credit dispute letter. Based upon prior conduct, Equifax not only located the consumer's credit file, but it also took actions to investigate the credit dispute on the very credit file that it claimed to be unable to locate. Worse yet, it does not provide the real results of its secret investigation.

21. Equifax's letter not only was deceptive and improper by its very issuance, but it was also inaccurate as to Ms. Acuil because she had included the very identifying information in her credit dispute letter that Equifax's letter in response requested. Equifax had no reasonable basis to determine that it could send its letter that notified Ms. Acuil that the result of the investigation was a termination of said investigation while at the same time conducting the investigation. Based upon information and belief, the sum total of Equifax's actions are that it received notice of the dispute, misrepresented that it could not locate the credit file, deceptively conducted a secret investigation, failed to reasonably review the documents that Ms. Acuil provided, and thereafter never notified Ms. Acuil of the actual results of the secret investigation that Equifax conducted after receiving the first credit dispute letter.

22. Ms. Acuil needed to access her credit, and she attempted to obtain credit after she sent her credit dispute letter. Unfortunately, she was denied credit on multiple

occasions as a result of inaccurate Equifax credit reports that based upon information and belief, continued to contain information regarding the identity theft related accounts.

23. On April 12, 2013 and April 15, 2013, Ms. Acuil was denied credit for two different Capital One bank credit card applications. Based upon the credit denial letters, Equifax could not have removed the identity theft related accounts after receiving the first credit dispute letter because the first factor cited in the credit denials were too many delinquent past or present credit obligations. Because Ms. Acuil should have had no past due accounts on her credit report, the appearance of past due accounts demonstrated that Equifax did not remove the accounts from her credit file after it received the first credit dispute letter.

24. Similarly on April 15, 2013, Ms. Acuil was denied credit for a Discover card. Discover stated, "We are unable to approve your request at this time for the following reason(s): COLLECTION, CHARGE-OFF, OR JUDGMENT." Later, in the same letter, Discover identified Equifax as the entity that provided it with a credit report to make the decision.

25. Ms. Acuil also was denied credit when trying to purchase an automobile. Based upon information and belief, Equifax released inaccurate credit reports to BB&T Dealer Finance on April 15, 2013, Alexandria Toyota on April 15, 2013, Toyota Financial Services on April 15, 2013, and Passport Nissan on April 14, 2013.

26. Equifax's issuance of credit reports to potential creditors who input the same identifying information into their requests that a consumer provides when its denied access to their own credit files also demonstrates Equifax's systemic failure for compliance with the Fair Credit Reporting Act. Equifax had no problem locating Ms.

Acuil's credit file to provide a creditor with what it believed was Ms. Acuil's credit file because it knew all along the credit information that Equifax associated with Ms. Acuil. Sending credit reports to potential creditors but not issuing consumer file disclosures to consumers who provide the same identifying information is standard operating procedure for Equifax because it makes money by selling credit reports to creditors and therefore Equifax has a profit incentive to provide whatever credit information that they maintain in their files about a prospective credit applicant consumer because providing information to a creditor generates revenue for Equifax. However, when that same consumer provides the same information to Equifax in order to request a credit file or make a credit dispute, Equifax suddenly is "unable to locate" the credit file so that it can be sent to the consumer because locating credit files and investigating consumer disputes is one of the major costs of doing business for Equifax.

27. Equifax is on notice thru punitive damage verdicts in other cases that its operating procedures operate in reckless disregard for the Fair Credit Reporting Act, and Equifax refuses to make the necessary changes so that it will be in compliance with said act regarding the provision of consumer file disclosures, investigation of disputes, and issuing notices of the results of the reinvestigation.

28. Frustrated and upset that the first dispute letter did not solve her problem and that Equifax still would not disclose the contents of its credit file to her, Ms. Acuil decided to send another credit dispute letter to Equifax.

29. On or about April 16, 2013, Ms. Acuil sent a second credit dispute letter to Equifax. Once again, she explained her situation, provided proof related to the identity

theft, and included the same identifying documents for a second time like her driver's license and social security card.

30. As a result of the second dispute letter, Equifax responded on April 25, 2013 by claiming that certain accounts were not on Ms. Acuil's credit file and deleting other accounts that were related to the identity theft. Despite the fact that Equifax took action after the second credit dispute letter, Ms. Acuil's damage had been already been done to her credit report and scores because the scores were lowered by the inquiries that occurred when she applied for credit and was improperly denied because of the inaccurate reports issued after the first credit dispute letter.

31. If Equifax had conducted a reasonable investigation after receiving the first dispute letter by deleting the items in her credit file and properly notifying her of the results, Ms. Acuil would have had a higher credit score when she applied for credit in April 2013. Ms. Acuil has a lower credit score because of the previous inquiries and cannot obtain credit. The new attempts to obtain credit are being denied because of excessive inquiries. As a result, she continues to suffer damage based upon Equifax's failure to conduct a reasonable investigation after it received the first credit dispute letter. In addition, Ms. Acuil has no way of knowing if Equifax truly fixed her problem because of the ongoing credit denials when she should have no derogatory information on her credit report.

32. Ms. Acuil brings the present lawsuit for her on-going damages related to Equifax's actions including loss of the use of her credit, upset, frustration, anger, and emotional distress.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681i(a)(1)
## 15 U.S.C. §1681i(a)(6)

33. Plaintiff incorporates paragraphs one (1) to thirty-two (32) as if fully stated herein.

34. Defendant Equifax has willfully violated the provisions of the FCRA by willfully failing to comply with its obligations as a credit reporting agency under the FCRA in accordance with its statutory duties to conduct a credit dispute investigation pursuant to 15 U.S.C. §1681i(a)(1) and thereafter notify the consumer of the results of the investigation conducted under 15 U.S.C. §1681i(a)(6). Equifax is liable to Ms. Acuil for actual damages, punitive damages, and statutory damages of $1,000 under 15 U.S.C. §1681n for each occasion that it issued the letter indicating that Equifax could not locate Ms. Acuil's credit file when Equifax did in fact locate the credit file.

35. Equifax receives a credit dispute letter and thereafter issues a letter to consumers claiming that it is unable to locate that consumer's credit file. Equifax issues the letter to fool the consumer into thinking that no investigation will be conducted because the consumer failed to provide sufficient identifying information. Thus, Equifax tries to make the consumer feel responsible for the early termination of the investigation. Having falsely represented that it cannot locate the consumer's file and therefore cannot process the dispute, Equifax proceeds to secretly issue ACDVs to the various furnishers to determine what their response will be. By fraudulently representing that there will be no investigation, Equifax attempts to relieve itself of the statutory burden of having to conduct any independent investigation and also eliminates the obligation to report the results to the consumer. As an added benefit, Equifax also stops the consumer from

submitting subsequent or follow up dispute letters that challenge any remaining accounts that were not resolved from the processing of the initial dispute letter. Equifax's actions egregiously violate the consumer's FCRA rights and the stated purpose of the act to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4). No fairness can be obtained by allowing a consumer reporting agency receiving a credit dispute letter from a consumer to be allowed to misrepresent that it is unable to locate the consumer's credit file and thereafter failing to disclose the results of the secret investigation that is conducted into the contents of that consumer's credit file.

36. Based upon documents reviewed in prior cases, Equifax's internal records as well as the consumer's own credit file will clearly demonstrate that Equifax's letter stating that it is unable to locate a credit file is a misrepresentation to the consumer. The very credit file that Equifax maintains that it is "unable to locate" will include notations in the ACIS cases and other internal documents will prove Equifax did in fact locate the credit file, noted the dispute in the ACIS case, and took actions to investigate the consumer's credit dispute by issuing ACDVs to furnishers of the dispute information in the consumers letter while never sending the results of the actual investigation that Equifax secretly conducted after receiving the credit dispute letter. Similarly, the inquiry section of the consumer's credit file may expose that fact that Equifax was in the file and working on it. Because Equifax responded to the consumer's complaint by saying that it could not conduct the investigation, it will not issue a revised copy of the consumer's credit file and the consumer will not notice that Equifax actually was in there and working on the file. Moreover, most, if not all consumers, will never understand what it

means that Equifax had accessed their credit file and therefore will not comprehend what that really means.

37. By way of example, Equifax received Ms. Acuil's first credit dispute letter on March 5, 2013 as demonstrated by a U.S. Mail certified return receipt card.

38. As a result of receiving Ms. Acuil's first credit dispute letter, Equifax notified Ms. Acuil that the results of the investigation into her credit file dispute was that it was unable to locate her credit file thus terminating the investigation on five different occasions.

39. Based upon a subsequent disclosure of an Equifax consumer file disclosure to Ms. Acuil, Equifax misrepresented that it could not locate Ms. Acuil's credit file because the inquiry section of Ms. Acuil's Equifax file disclosure records the occasions that Equifax took actions on the very credit file that Equifax claimed that it could not locate. For example, Equifax took actions on Ms. Acuil's credit file on March 7, 2013, March 8, 2013, March 11, 2013, March 12, 2013, March 15, 2013, March 16, 2013, March 18, 2013, and March 30, 2013. These dates identified on this section of a later file disclosure are different from the dates of the letters that Ms. Acuil received. Accordingly, the reasonable inference from this information also leads to the conclusion that Equifax was conducting activity on the very credit file that it claimed to be unable to locate on five different occasions. Based upon information and belief, Equifax's internal records including but not limited to ACDVs and ACIS case information will also reveal that Equifax not only located Ms. Acuil's credit file but that it conducted a secret investigation by issuing and receiving ACDVs concerning information in Ms. Acuil's credit file in which it did not inform Ms. Acuil of the results of the investigation.

40. Equifax wants to have it both ways when it comes to dispute investigations. On the one hand, Equifax claims that it is unable to locate a credit file, gives the illusion of terminating the investigation, while it records the issuance of the letter in the consumer's credit file, conducts a secret investigation, and never sends the results of the actual investigation to the consumer. Equifax's actions in this regard are systematic and part of an intentional process and procedure to deceive consumers and avoid having to conduct a real investigation under the FCRA.

41. Ms. Acuil is entitled to actual and statutory damages for these violations of the FCRA.

42. Punitive damages are also required to change Equifax's reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. Equifax makes unfair and deceptive representations that it cannot locate the consumer's credit file after receiving a credit dispute in contravention of the stated requirements of the FCRA to assure that credit reporting agencies deal fairly and impartially with consumers regarding their credit file, only punitive damages will end these practices by Equifax.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681i(a)(4)

43. Plaintiff incorporates paragraphs one (1) to forty-two (42) as if fully stated herein.

44. Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Equifax is liable to the plaintiff for actual

damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information submitted by the consumer.

45. Equifax violated 15 U.S.C. §1681i(a)(4), after it received Ms. Acuil's credit dispute letter dated February 27, 2012. Based upon its communication in response to the dispute letter, Equifax misrepresented that it could not locate Ms. Acuil's credit file when the truth of the matter was that it located her credit file and began to investigate the contents of the file. Equifax's misrepresentation and request for additional information was a reckless and intentional effort to delay and thwart Ms. Acuil from solving the problems related to her credit file because Ms. Acuil had provided all of the identifying information that was reasonably necessary to locate her credit file and investigate her dispute.

46. If Equifax had conduct a reasonable review of all the relevant information provided by Ms. Acuil, Equifax could have never allowed the identity theft related accounts to remain on her credit report. First, Ms. Acuil identified the officer name, cell phone number, and case number related to the identity theft related police report. At this juncture, Equifax knew that the data that it possessed regarding the accounts was unreliable and subject to challenge. Ms. Acuil also enclosed copies of portions of her passport, and a reasonable review of those documents would have demonstrated that she was out of the country at the time that the identity theft related accounts were opened. Any review and consideration of this information would have led to the inescapable conclusion that the account should have been removed from her credit reports, which did not happen.

47. Ms. Acuil suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to purchase a car, and emotional distress damages.

48. Punitive damages are required to change Equifax's reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. Equifax ignores information that is provided by the consumer and thereafter fails to provide information on the deceptive representation that it cannot locate the consumer or does not know enough information about the consumer. The factual circumstances and letters provided by Equifax to Ms. Acuil demonstrate the reckless disregard that Equifax has for reviewing and considering the information provided by consumers as a part of their credit dispute letters.

## COUNT III
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

49. Plaintiff incorporates paragraphs one (1) to forty-eight (48) as if fully stated herein.

50. Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Equifax is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

51. Equifax willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Ms. Acuil.

52. Ms. Acuil informed Equifax in February 2012 that she was the victim of identity theft, and she provided the case number, officer name, and officer phone number for the report that she had filed because she was not able to have a copy of a report at that time. Moreover, she had provided detailed passport records that demonstrated that she was out of the country and could not have opened the accounts. With knowledge of these facts and after misrepresenting that it could not find her credit file, Equifax proceeded to publish inaccurate credit reports that caused her to suffer credit denials.

53. Based upon information and belief, Equifax released inaccurate credit reports to BB&T Dealer Finance on April 15, 2013, Alexandria Toyota on April 15, 2013, Toyota Financial Services on April 15, 2013, and Passport Nissan on April 14, 2013.

54. Punitive damages in this matter are also warranted because Equifax displayed a reckless disregard for publishing accurate information about Ms. Acuil's credit history for the reason alleged herein. Only substantial punitive damages will deter Equifax from publishing inaccurate credit reports.

**Prayer for Relief**

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against Equifax;

b) punitive damages based upon Equifax's repeated violations of the FCRA;

    c)      statutory damages against Equifax based upon multiple violations of the FCRA;

    d)      interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

    e)      all other further relief that this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
Angong D. Acuil

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Drive, Suite 103
Reston, Virginia 20191
(571) 313-0412
F: (571) 313-0582